AMBRO, Circuit Judge,
concurring in part and dissenting in part.
I share Judge Fuentes’s concern that failing to hold a school accountable for violence done to students creates an incentive for school administrators to pursue inaction when they are uniquely situated to prevent harm to their students. For that reason, as well as the others in Judge Fuentes’s exceptional opinion, I wholeheartedly join Part I of the dissent, and would hold that a special relationship exists between the School and its students.
But I cannot agree that the facts of this case demonstrate a cause of action under our state-created danger theory. The majority concludes that the School’s decision not to expel Anderson is a failure to act and one that did not render the Morrows more susceptible to danger. I agree, but think we must delve further. Thus, while I join that part of the Court’s judgment, I write separately on this issue.
The fourth requirement of our state-created danger claim is that “a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.” Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir.2006). This test, I *186 believe, is not intended to turn on the semantics of act and omission. Instead, the requirement serves an important purpose: to distinguish cases where government officials might have done more to protect a citizen from a risk of harm in contrast to cases where government officials created or increased the risk itself. Following violence, suffering, and/or death of one of our citizens, we often wish that a state actor with the authority to do so had intervened. We are not comforted by concluding that officials failed to act when we could just as easily say that they affirmatively decided to do something. But we are limited by the protection afforded by the Constitution and the Supreme Court’s holding in DeShaney v. Winnebago Cnty. Dep’t of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (“[A] State’s failure to protect an individual ... simply does not constitute a violation of the Due Process Clause.”). We have recognized a narrow exception to DeShaney’s rule: a constitutional remedy may exist when a government actor creates or increases the risk to a citizen. Id. at 201, 109 S.Ct. 998; Kneipp v. Tedder, 95 F.3d 1199 (3d Cir.1996).
Judge Fuentes makes the most compelling case possible: “it may be inferred from the Complaint that the School did do something” by deciding to suspend rather than expel Anderson, and then continuing to keep her in school despite repeated acts of violence, criminal adjudication, and a disciplinary code that directed expulsion. Fuentes Dissent 200. But the context of the School’s decision — the prior violence, the no-contact order, the disciplinary code, and the ability to protect the Morrows by expelling Anderson — are factors relevant to the School’s special relationship with the Morrows. I do not believe we can consider these factors to deem the School’s behavior a creation of risk. The School acted no differently in failing to protect a vulnerable member of society from harm than defendants in cases where no state-created danger exists, including DeShaney, 489 U.S. at 201, 109 S.Ct. 998 (risk of abuse suffered by four year old left in the care of his father was not created by social workers who had previously removed him and returned him to the home); Sanford v. Stiles, 456 F.3d 298, 311-12 (3d Cir.2006) (high school student’s risk of suicide not caused or increased by guidance counselor who met with him twice); Bright, 443 F.3d 276 (risk of attack not created by police who failed to arrest attacker after he violated parole).
Holding that the School’s actions — or lack thereof — in this case were sufficient to plead a state-created danger claim would substantially broaden this narrow exception. DeShaney is grounded in constitutional law, but has an important practical effect too. Federal courts cannot be the forum for every complaint that a government actor could have taken an alternate course that would have avoided harm to one of our citizens. I also worry that creating a constitutional tort out of a school’s failure to expel a student creates a too-easy incentive for schools to expel quickly students who engage in any violent behavior in order to avoid liability or the threat of suit.
The special relationship theory, which is far more circumscribed, does not present this same risk. Accordingly, I concur in part and dissent in part.